Good morning, Your Honors. William Romain on behalf of Jeremy Rocha, plaintiff and appellant. We would ask to reserve two minutes of our time for rebuttal. This is a pleading case. The pleading is we didn't file a reply brief deliberately because we feel like the response brief, the response of brief is very clear. It makes the point that the pleading here complies totally. They understood fully what the pleading says. Rule 8 says the pleading has to be clear, concise, and has to be a statement of at least enough facts that the person against whom you're pleading understands what you're pleading against them. In this case, the response of brief makes that very clear. This is a pleading that says two sheriff's deputies went to my client's house, first got themselves a warrant by not either being reckless with the truth or deliberately distorting the truth about the criminal activity that was going on there, whether or not that's to be litigated, but in any event, went to the house, found my client there, within moments of getting there realized that my client was not committing a crime under California law, and they were not there to enforce any other law. But did they find his medical marijuana card or permit during the search? That is what, yes, and that's in the response of brief as well. Did you allege that in the complaint, that he presented them with his medical marijuana card? I believe that's paragraph 10. I'm sorry, I don't have the complaint in front of me. I'm looking at 14. 14. In the second amended complaint? In the second amended complaint. And I believe that our allegation is that clear, that my client was a medical marijuana licensed user and identified himself as such. But just because you have a – as I understand it, just because you have a medical marijuana card, doesn't it – you're not exempt from violating, you know, it doesn't mean you're not – you couldn't possibly violate the medical marijuana laws, I mean, the marijuana laws. True. It has to be that – doesn't it have to be that the amount of marijuana must be reasonably related to the scope of the authorization by the card, medical needs, for example? That is what Proposition 215 says and the California Supreme Court upheld in People v. Kelly, that the amount is between the doctor or the physician recommending it and the patient, but it – So when they went out there, what did – you don't allege what they found. What did they find when they went out there? What they found was medical marijuana. The complaint is that – Well, did they find – did they find, you know, like, how much, 20 grand? They found a large quantity of medical marijuana. A large quantity of marijuana that was reasonably – that he needed for his medicinal purposes. That he needed for his medicinal purposes. That's the allegation. It looks like you'd have to live as long as Methuselah to use that much. Some people actually use it in the bathtub and soak in it. So it's not unusual, it's not always smoked, and that's one of the misunderstandings about it. I had thought that – and I could be wrong, it's just a vague recollection – that under California law, you didn't have a shield against a search because of the medical marijuana card. What you had was a defense in a criminal case. That is correct. And that's why the pleading alleges that the violation of his right wasn't the right to be – to not be searched, but rather the right – the right against an unreasonable search and that the search became unreasonable during the execution of the warrant. That's – that's part of the case. So you're saying it was okay for him to search despite his being on file as a medical marijuana user. What was not okay was something that happened after they started the search, which was? When they realized that he has – he was authorized to have medical marijuana. But let me admit that, why would that invalidate the search? I mean, if I – they may – your – I thought your claim was that they then arrested him. Sure. It may well – and they are, and the arrest is certainly part of the allegation. It certainly may invalidate the search. We don't know whether it will invalidate the search because we haven't got to discovery. We're talking about the pleading here. I certainly concede there's a possibility that it was a clean search, but we won't know that. What are your Federal constitutional claims? Federal constitutional claim is Fourth Amendment search of – Unreasonable search. Unreasonable search, unreasonable seizure. Are you also challenging the affidavit, the content of the affidavit? The content of the affidavit, the search pursuant to an affidavit – sorry, pursuant to the warrant was unreasonable. Do you allege that the contents of the – that there's information in there that's false? Yes. In fact, the information that was false was that – Do you make that specific allegation in the complaint? That allegation is made, that they had – that they knew that it was false or that they were reckless with the truth, deliberately reckless with the truth. That is alleged. So they got an affidavit based on false information? False information? They go out and they do the search. And then they go out and do the search. And then when they do the search, they find that there's – in addition to medical marijuana there, they find a firearm. They also search and seize – or seize the firearm, which is protected. There's no reason for them to seize the firearm. I'm not sure there is. If the quantity of marijuana is so great that it looks like it's for purposes of sale rather than for medical consumption, then it's – for the low standards needed for a seizure during a search, it seems like they could infer that the gun was likely for the protection of the inventory. That could come – that could come out in the discovery of the case. We don't know that at this point. There could be qualified immunity. We don't know that at this point. What we know is – Okay. So they seized the gun and they seized him. They seized the gun and they seized him. So there's two seizures that we allege they didn't have the right to do. And was he prosecuted and convicted for these? He was prosecuted. The charges relating to – there was no charges relating to the firearm whatsoever. So we don't have a heck problem with respect to the firearm. I believe that there's still pending – I am not 100 percent sure where we're at on the other criminal for the marijuana. Was he convicted? Do we know that he was convicted? He entered a plea to a charge of maintaining a residence for the consumption of – or a place for the consumption of marijuana. However, and there was a finding, and I believe there was – yes, there was a conviction entered, and at this point it matters before the court to withdraw the plea and take the conviction out. And that's actually pending in the Tulare County Superior Court right now. So, yes, there was a plea entered and there was a conviction. But you also have a claim under the ADA. Well, right, and of course, heck, it wouldn't apply to the ADA either. But walking in and yelling and screaming at someone when they find out he's deaf and abusing him, which the complaint alleges, the Second Amendment complaint alleges, because he's deaf would violate the ADA. Did they know that he was deaf when they met him? The complaint so alleges, yes, that they could tell immediately that he was hard of hearing, that he was having difficulty understanding them, and that the complaint actually went so far as to say he required a – an interpreter and that one was not supplied, so that under Article – Title III, Title II of the ADA, he was not given the services that he should have received. I don't understand that part of the case. It seems to be basically that the cops yelled at him and were disrespectful. And abused him physically, I think we said. You don't say how, though. You don't say how. You don't say how. No, we don't say how. I just say that he was abused physically. Here's my concern. To assert their authority, and many police think they need to do this to assert their authority, whether they're right or wrong, they typically are loud and aggressive and vulgar in their speech, except when they know they have a recorder on, and they are – they start off right from the get-go being disrespectful. They often call people by their first names, even though they expect to be called officer or detective. They push people down and get physical control over them, and I don't see where it's any different for deaf people or anyone else. I don't know if that would be the circumstances that would come out. I'm not – I don't know whether during the case we wouldn't come out with facts, for example, you're deaf and push down. Is there a case law that says the ADA applies in this kind of circumstance? Yes. Title II of the ADA applies to public services and police. Is there a specific case law, though, that just isn't there? That I don't know. I haven't got to that point. Did you cite any to the district court? I did not. I did not cite any case. As I said, this is a pleading stage, so right now I felt the allegation was that. So the district court had just said the complaint is insufficient to pledge a claim under the Constitution under 1983. I understand the district court said that, and of course, we have an issue about whether or not that should have – we should have been given an opportunity to amend it. You had some State law claims as well. Did he knock out the State law claims on – for failure to state a claim? The State law claim is still there and was there at the conclusion. Well, did he dismiss the State law claims? He dismissed all the claims, yes. He dismissed the entire case. But did he dismiss the State law claims without prejudice so he could refile them in State court? No, he did not dismiss them. I don't recall seeing with or without prejudice in his order. He says he dismisses the action with prejudice. The action with prejudice. So that would encompass the State law. I would think so, yes. Did you ask the district court for leave to amend? No, I did, and in fact, the judge said that that was – there would be no more leave to amend. That was – the trial judge indicated in after – In the first ruling. In the first ruling, we did amend. And that was the second amendment complaint we're dealing with now. And in that ruling, the court indicated there would be no further attempts to amend. I have about 20 seconds for rebuttal if the Court has any other questions. We actually don't, but we'll see if we give you a rebuttal to see what the government does. Thank you. Thank you. If the Court has any further questions. I do have one question. I just – I'm wondering why you didn't allege in the second amended complaint how much marijuana there was and – or even how it was related to his medical needs. I didn't allege it because I didn't consider that Mr. Rocha has any Federal right to possess marijuana, the right we were arguing. We did not claim that the marijuana was seized and violated his rights. I think the officers – that isn't a Federal right he has. So our – our thought was that the amount is really irrelevant, the fact that they went in and – and did the search and – So it's more their defense and we've never seen their answer. It would – To come back and say this was not a violation of State law because – or 1983 because it was so much that it couldn't possibly have been medically reasonably. Correct. That would be our contention, that it would be a defense matter, not something in pleading. Okay. Thank you. Thank you. If the Court has any further questions. Thank you. Good morning, Your Honors. Kevin Stimmel for the County of Tulare and Deputy Macias. Just to briefly clarify the issue about the amount of plants, in the county's request for judicial notice, it's the criminal file of the case. At page 14 of our excerpts of the record, you'll see that there was 80 plants that were found at the appellant's residence. And according to the recommendation, he was allowed 70 plants. So just to try to put that issue to rest. Why don't you just file an answer to this and just say his recommendation is 70 and there were 80? Well, I think that's a whole separate issue for the criminal case. As far as the claims here, the Court found that there was just no facts to really show that there was any rights violated here. What more did he have to plead? That's what I don't understand. What more did he have to plead? I mean, you don't – you know, I realize that under Iqbal and whatnot, you know, there's supposed to be enough facts to show that you have a plausible claim for relief. Yes. But Rule 8 still is there. I mean, a plain, short and simple statement. It doesn't have to be, you know, every little factual detail. Yes. Yes. It's over pleading. Yes. And you get these prolux, you know, these complaints, the 100-page complaints now in Federal court. Yes. I understand that. You know, where – what is really missing from this complaint? Well, what I think is missing is – That's in – so that the plaintant remains inadequate to advise you of what his claims are. I just think if you take the complaint as what he says, it's inadequate for any type of violation. If you look at the rights he's saying is violated, it was that he – really what he's saying is that his client had a right to grow this marijuana. And under Federal law, it's contraband per se, so you can't assert that. I thought what he was saying is that under State law, he had the right to possess the marijuana that they found. And as well under State law, the California Supreme Court said that there is no general right to possess or grow or cultivate marijuana. All of the Compassionate Use Act really has done is provide for a limited defense in the criminal court from prosecution. It doesn't create any kind of shield of immunity from arrest, and it provides really no uninhibited right to grow marijuana. So you can – so somebody can be arrested here, like here. Yes. And then they have a defense. Yes, they have a defense. That the amount that they possessed was consistent with their authorization. Yes, exactly. So for him to say that there was – his rights were violated because the police arrested him for growing marijuana is not really an issue for a civil rights case. But what about his challenge to the affidavit? To the affidavit, I believe that would be something that would be done within the State court if he was arrested for – Or if you provide false information to the police, it violates and you prove it's false. And I don't think there's – It violates the Federal – it violates the Fourth Amendment. And I don't think there's any facts here that would suggest that. He does say there were false statements, but there's nothing to suggest that he actually challenged that in the State court. And if he's challenging – Why did he have to challenge that in the State court? Well, I think that that would show that there were actually false statements. I don't believe that there is anything – Well, why can't he allege that in – this is a civil case. This is a 1983 case. Yes. So if he does allege false statements – Now, maybe that if he pled guilty, that he's got a serious heck problem here with the Fourth Amendment. Yes. And so I think if you look at the Kransky v. State case, in that case, the appellant and plaintiff as well mentioned that there were false statements that police officers or that it was campus officers arrested the person knowing that there were false statements that were leading to the investigation. I think that in itself, just saying there were false statements doesn't get you anywhere. You have to have some facts to get you further. Why couldn't he cure – why couldn't he cure that defect in his complaint just by filing a Third Amendment complaint that said the false statements were A, B, and C, enlist them? Well, I think he could try to do that, but if you look at the affidavit, what he's saying is that they were false statements because it was legal marijuana. And I don't see how he can get there because if you look at the facts in the criminal case and he was charged for it, that just can't be true. He's trying to say – I don't know exactly what statements he's saying were false in there because he didn't say so in the complaint and that was one of the things that actually I wondered about with the complaint. I believe he actually does in his second-minute complaint, he does say – he highlights his complaint, he does so as well in his brief that the officers knew that there was legal marijuana being grown there. But it doesn't say what statement in the affidavit was a lie. No, it does not say that. That's what I'm asking for. No, yes, it does not say that. I would think it's a 1983 case, so he doesn't have to exhaust. It's not like habeas. All he has to do is allege the violation of a Federal right and lying in an affidavit to get a search warrant might do for that. But I still think if you look at Crancy v. State that just saying that there's a false statement doesn't get you further enough, as well as in Twombly, it talks about just saying that there's a conspiracy doesn't get you – I understand. Yeah, I agree. He needs – he needed to be more specific what the statements were, who made them, why they were false. I mean, there is – I think it's Rule 9, right, requires particularity when you're alleging fraud. Yes, especially. Falsity. So – but that still doesn't answer the question why he shouldn't have been given leave to amend to specifically comply with Rule 9. Well, I think the Court had given him leave to amend previously, which is why he was allowed to file the second complaint, and there was no improvement. And I think the Court can see that there was really no way for him to improve that. So he also alleged an excessive force claim, as well, as I understand it, correct? I don't recall an excessive force claim. So, like I said, he was physically apprehended or physically seized. Yeah. I mean, he was – he was arrested. I don't think there's anything further to say that he was physically assaulted or anything like that in the complaint. Well, that's not the way I read it, but maybe I'm wrong. Yes. I'm sorry. I didn't read it that way. What's your understanding of the state of affairs here, that the district court dismissed the action without leave to amend, and so the case is over? Yes. He couldn't file in State court. Yes. That's how I understand it. Right. It was dismissed with prejudice. So what were the State law claims? It was under the Bain Act and similar. But that's also – the Bain Act also encompasses the State constitution as well as the Federal constitution, correct? Yes, for civil rights violations. So did the judge determine that there was no State constitutional claim? Yes. When he looked at the Bain Act, there was nothing – as well as the civil rights violations, there was no threats or coercion or anything of that nature that would have – that were – that he hadn't alleged. Yes. There was nothing sufficient to support those claims. What he says here is that the police failed to provide aides, interpreters, and assistants to ensure that communications were made by them to – made by them to Rocha were understood by Rocha, and that they abused Rocha punitively for his failure to obey their verbal commands. That's what he says. Yes. So why doesn't that state a claim? So under the ADA claim, there's really nothing to show that he was denied any service. And as far as interpreters, the case law has shown that there's really – I know there was the Sheehan versus City of San Francisco case recently as well that the Supreme Court sent back. But the Supreme Court didn't really address the ADA issue in Sheehan. Yes. So that issue wasn't. But as far as the qualified immunity for that ADA claim, at that time – and as well, there's – at that time – this was back in 2010, I believe – there was nothing that would show that it was clear that he should have provided that interpreter. There was no – Why would qualified immunity apply to the ADA? The ADA doesn't arise under 1983. It's a separate cause of action. Yes. I'm just going as far as to the reasonableness of that – whether Title II should apply in the arrest and execution of a search warrant. How can you say – how can you say as a matter of law based on the allegations in the complaint that it's barred? That's the problem that I had with this. Well, if you look at what he says, he says that the officers yelled at him, that the officers knew he was hearing impaired. There's nothing that says he was deaf in the complaint. Right. But then they say – and, you know, gosh, we've been watching all of this on the videos that the police are taking – but, you know, they take the position that if you fail to obey their commands, then they can escalate the amount of force against you. But if you're failing to obey their commands because you can't hear them and they're not facilitating your ability to hear and understand them, isn't that the next level of force? Doesn't that become more excessive? I would see that that could be seen as excessive. But I think if you look at the facts here, at the excerpts of the record 13, it shows that Jeremy Rocha, when he knocks – they knock on the door, he says, okay, if you just ask, I will let you in. He's communicating with the officers clearly. There's nothing to show that he was hearing impaired or that there was any type of – So to what extent can we take judicial notice of the criminal proceedings if they're not final? Yes, if they're not final. I'm just saying as far as his ability to amend the complaint, I think what he says in the complaint is still insufficient. He just says that he was hearing impaired, but there's nothing to show that he was denied an interpreter, requested an interpreter. I don't think you can use the police report to cure whatever problem there may be in the 12B6 dismissal. 12B6 dismissal, you assume what's said in the complaint is true. Yes. And as far as the police report goes, we're not at the summary judgment stage, so we don't even know if there's a genuine issue of material fact about whether the police spoke the truth. Yes. And I'm just going more to his ability to amend the complaint, I'm not speaking to – You're saying he can't – that an amendment would be futile because he really couldn't say things that would be inconsistent with what the policeman says happened. Yes. But he may think the policeman's lying and that what happened is not what the policeman says. I believe he could, but I don't believe the argument's been made. There's nothing in the complaint that says that he ever requested an interpreter or communicated that. He just says that the officers knew that he was hearing impaired. It's really conclusory in its nature. There's not facts surrounding that to support the context. So he would have to allege, I told them I was hearing impaired? Yes, I believe so. That would be reasonable. Or did they use from some other basis? Let me – this is just aside from the issues of this case, but I was curious about the preliminary statement. You're from Tulare County? Yes.  Appellant's excerpt to the Record 24. All this communication about – all this political stuff – is this a standard form of order now in the Eastern District? I wasn't involved in – or I was involved in the appeal, so I couldn't speak exactly to that. You don't know that this is what they're routinely doing? I'm not sure exactly. Sorry. I couldn't speak to that. Okay. It's kind of interesting to me. I can note that. Yes. Okay. So without – It does – that does bother me because it does carry a certain tone that we're not going to – you know, we're not – you either get it right the first time or you're out of here. Yeah, we're not going to pay attention to the civil case. We're not going to give them their just due because if you want – if you want your just due, you contact the Senators. It's kind of – it's somewhat – it is bothersome. I would say no comment to that, but I'm sorry. We understand. We understand. Yeah. I know. It's just one of those things that you just wonder. Yes. Well, without further questions, I would submit and ask the Court to affirm the lower court's ruling. All right. Thank you very much. Thank you. Do you want 30 seconds? Actually, I don't know if the Court has any questions. I have one. Yes. I'm still having trouble getting my head around the idea that it can be a violation of the Federal Constitution to arrest somebody for possessing what under Federal law and the Constitution, as the Supreme Court has interpreted it, is Federal contraband. You're not allowed to possess it. It would be appropriate if they were – if the officers were enforcing Federal law. I would concede that. But these officers are operating under the authority of the State of California. I understand that. And I see your point. But the thing is, you're in Federal court about alleging a violation of a Federal right. And I thought what contraband meant was that it is impossible for a private individual to hold title to that particular thing. I would concur with that. I think that's why I didn't – in the complaint, that is why we are trying not to the seizure of his person and the seizure of the gun and the search that exceeded the warrant. That was what the complaint was trying to allege. I would concur that I don't think there's a property right in the contraband itself, even if it's for medicinal purposes, that is Federally protected, because I think Congress has enacted a statute to that effect to contradict that. So I wouldn't argue very strenuously on that, and that's why I tried to draft the complaint around it. And for the Court's information, again, on the aside, yes, that was very common around that time that the judge was putting those statements into all the orders. I practiced a lot in that court. All right. Thank you very much, Counsel. Rocha v. Tulare County will be submitted. And we'll take up United States v. Pulley.
judges: Kleinfeld, Wardlaw, Paez